UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOE BALTAS, *Plaintiff.* v. JASON SOTO, *Defendant.* | No. 3:23-cv-00930 (VAB) |

**RULING AND ORDER ON SUMMARY JUDGMENT MOTION**

In this civil rights action, Joe Baltas ("Plaintiff"), a sentenced state prisoner appearing without counsel, alleges that Connecticut State Police Trooper Jason Soto ("Defendant" or "Trooper Soto") violated his constitutional and state-law rights when investigating a September 12, 2019, incident at the Hartford Correctional Center ("HCC"). After initial review, the Court permitted claims for false arrest, malicious prosecution, fabrication of evidence, and defamation to proceed. Trooper Soto now moves for summary judgment on all claims. Memorandum of Law in Support of Second Motion for Summary Judgment, ECF No. 68-1 ("Mem. Supp.").

For the following reasons, Trooper Soto's motion for summary judgment is **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

#### i. The Incident and Initial Reports

On September 12, 2019, Connecticut State Trooper Jason Soto went to the Hartford Correctional Center ("HCC") in response to a reported inmate assault on a correctional officer. Mem. Supp. at 1–2; Declaration of Trooper Jason Soto, ECF No. 68-4 ("Soto Decl.") ¶ 3. Upon arrival, Trooper Soto met with Lieutenant Nathan Alexander of the Connecticut Department of

Correction. According to Trooper Soto's declaration and the contemporaneous police report, Lt. Alexander reported that Mr. Baltas left his cell during meal distribution, failed to comply with orders to return to his cell, engaged in a verbal confrontation with Correctional Officer Rizvani, and ultimately assaulted him. Mem. Supp. at 2; Soto Decl. ¶¶ 4–6.

Correctional Officer Rizvani provided a written, notarized statement describing the incident. In that statement, he reported that Mr. Baltas approached him during feeding rounds, invaded his personal space, made physical contact, and struck him multiple times with a closed fist while Rizvani attempted to direct Mr. Baltas back toward his cell. Mem. Supp. at 2; Police Report, Ex. B, ECF No. 68-5 ("Police Report") at 5.

Mr. Baltas disputes the correctional staff's account and denies striking Correctional Officer Rizvani. Pl. LR 56(a)(2) Stmt. ¶¶ 3–12. But he has not submitted an affidavit or sworn declaration contesting the substance of the officers' statements.

**ii. Video Evidence and the Parties' Descriptions of It**

The Department of Correction recorded surveillance video of the housing unit where the incident occurred. A portion of that video was submitted by Trooper Soto as Exhibit C. According to Trooper Soto, the excerpt depicts Mr. Baltas emerging from his cell, approaching Correctional Officer Rizvani at close proximity, making physical contact, and clenching his fist as the two move back toward the cell. Mem. Supp. at 2–3.

Mr. Baltas argues that Exhibit C represents only a portion of the full recording and asserts that additional, unsubmitted footage would reflect a different sequence of events, including alleged actions by Correctional Officer Rizvani. Pl. LR 56(a)(2) Stmt. ¶¶ 8–16. Mr. Baltas further argues that the Trooper Soto mischaracterized Exhibit C as the entirety of the available footage. *Id*.

Trooper Soto identified Exhibit C as an excerpt, however, rather than the complete recording. Mem. Supp. at 11 n.2; Reply in Support of Second Motion for Summary Judgment, ECF No. 84 ("Def. Reply") at 2. No additional video evidence beyond Exhibits C and E has been submitted by either party.

**iii. Mr. Baltas's Decision Not to Provide a Statement**

Following the incident, Trooper Soto attempted to interview Mr. Baltas at HCC. According to Trooper Soto's declaration and the police report, Mr. Baltas initially indicated a willingness to provide a statement but declined to do so when correctional staff remained present. Mem. Supp. at 3; Soto Decl. ¶¶ 8–9. This interaction appears on the DOC interview video submitted as Exhibit E. Mem. Supp. at 3. Mr. Baltas does not dispute that he declined to provide a statement under those circumstances.

**iv. Statements in the Police Report Regarding Mr. Baltas's Conduct in His Cell**

The police report reflects information provided by Lt. Alexander indicating that, after the incident, Mr. Baltas smeared feces on himself or in his cell. Police Report, at 2. In his declaration, Trooper Soto states that he recorded this information as it was relayed to him by Lt. Alexander. Soto Decl. ¶¶ 11–12.

Mr. Baltas denies engaging in this conduct and asserts that the statement was fabricated by Trooper Soto. Pl. LR 56(a)(2) Stmt. ¶ 7; Pl. Mem. Opp'n at 12–13. Mr. Baltas has not submitted documentary or testimonial evidence corroborating his denial beyond his own assertions.

**v. Alleged Publication of Statements Concerning the Incident**

Mr. Baltas alleges that the Trooper Soto posted information about the incident, including a DPS-90-C form, on a public website. Pl. Mem. Opp'n at 12–13; Pl. LR 56(a)(2) Stmt. ¶ 59. Mr. Baltas bases this allegation on his own information and belief.

Trooper Soto states in his declaration that he did not post any information online, lacks the ability to upload information to state websites, and communicated solely through official police documentation. Soto Decl. ¶¶ 18–22. No additional evidence has been submitted regarding any alleged online publication.

**B. Procedural History**

On July 13, 2023, Mr. Baltas filed his Complaint. Compl., ECF No. 1.

On October 13, 2023, the Court issued an Initial Review Order permitting the case to proceed only against Trooper Jason Soto on Mr. Baltas's (1) Fourth Amendment false arrest and malicious prosecution claims, (2) Fourteenth Amendment fabrication of evidence claim, and (3) state-law defamation claim. Initial Review Order, ECF No. 11.

On June 20, 2024, Trooper Soto filed a motion for summary judgment. Mot. for Summ. J., ECF No. 28. That motion was supported by a memorandum of law, a Local Rule 56(a)(1) statement, and multiple exhibits, including video exhibits identified as Exhibits C and E. Mem. Supp. 1st, ECF No. 28-1.

That same day, Trooper Soto moved to seal the video exhibits. Mot. to Seal, ECF No. 29.

On June 22, 2024, the Court granted the motion to seal. Order, ECF No. 30.

Between June 2024 and early 2025, Mr. Baltas filed several motions for extensions of time, motions to compel discovery, and motions seeking relief related to access to the video exhibits submitted in support of summary judgment, and filed objections to multiple interim

rulings. The Court issued a series of orders addressing these motions and managing the summary judgment briefing process. *See* ECF Nos. 25, 31, 32, 34, 37, 40–43, 49–55.

On March 5, 2025, the Court denied Soto's first summary judgment motion without prejudice because the video exhibits were not properly filed and directed that any renewed motion include all memoranda, statements of fact, and exhibits, including Exhibits C and E, and that copies be provided to Mr. Baltas. Order, ECF No. 67.

On March 7, 2025, Trooper Soto filed a renewed motion for summary judgment. Second Mot. for Summ. J., ECF No. 68. The renewed motion included a memorandum of law, a Local Rule 56(a)(1) statement, and multiple exhibits, including Exhibits C and E, which were manually filed. Mem. Supp., ECF No. 68-1. The renewed motion also included Trooper Soto's declaration and a police report filed as an exhibit. Soto Decl., ECF No. 68-4. Police Report, ECF No. 68-5.

On March 19, 2025, Mr. Baltas filed an objection to the Court's March 5, 2025 order. Obj. to Order, ECF No. 69.

On April 4, 2025, Mr. Baltas moved to appoint counsel. Mot. to Appoint Counsel, ECF No. 70.

On April 7, 2025, the Court denied the motion without prejudice to renewal following resolution of the pending summary judgment motion. Order, ECF No. 71.

On May 29, 2025, Mr. Baltas filed a motion for reproduction of video evidence and a motion for an extension of time. Mot. for Reproduction of Video Evidence, ECF No. 72. Mot. for Ext. of Time, ECF No. 73.

On June 6, 2025, Mr. Baltas filed another motion for an extension of time and a motion to compel production of video exhibits. Mot. for Ext. of Time, ECF No. 75. Mot. to Compel Video Exs., ECF No. 76.

On June 9, 2025, Trooper Soto filed a response addressing the motions regarding the video exhibits and service. Resp. re Video Exs., ECF No. 77.

On June 16, 2025, Mr. Baltas filed a status update confirming that, as of June 12, 2025, he had been able to review the summary judgment video exhibits without issue or incident. Status Update, ECF No. 78.

On August 26, 2025, Mr. Baltas filed his opposition to the renewed summary judgment motion, including an opposition brief, a Local Rule 56(a)(2) statement, and a memorandum of law in opposition. Opp'n, ECF No. 80. Pl. LR 56(a)(2) Stmt., ECF No. 81. Pl. Mem. Opp'n, ECF No. 82.

On the same date, Mr. Baltas filed a motion for judgment on the pleadings. Mot. for J. on Pleadings, ECF No. 79.

On September 8, 2025, Trooper Soto filed a reply in further support of his renewed summary judgment motion. Def. Reply, ECF No. 84.

On the same date, Trooper Soto filed an answer to the Complaint with affirmative defenses. Answer, ECF No. 83.

On September 24, 2025, Mr. Baltas filed a further response to Trooper Soto's summary judgment reply. Pl. Sur-Reply, ECF No. 90.

On October 3, 2025, the Court denied as moot Mr. Baltas's motions related to reproduction of the video evidence, production of video exhibits, and additional extensions of time, in light of Mr. Baltas's confirmed access to the videos and the fact that Mr. Baltas had already filed his opposition to the renewed summary judgment motion. Order, ECF No. 91. Order, ECF No. 92.

## II. STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.").

The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48. "[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *See Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by

documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than "simply show that there is some metaphysical doubt as to the material facts" or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* (internal quotation marks omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967) and *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *See Dufort v. City of New York*, 874 F.3d 338, 343, 347 (2d Cir. 2017) ("On a motion for summary judgment, the court must 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'"). A court will not draw an inference of a genuine dispute of material fact from conclusory allegations or denials, *See Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011), and will grant summary judgment only "if, under the governing law, there can be but one reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250.

**III. DISCUSSION**

Trooper Soto has moved for summary judgment on all of Mr. Baltas's remaining claims: false arrest, malicious prosecution, fabrication of evidence, and defamation to proceed.

The Court will address each claim in turn.

**A. The False Arrest Claim**

To state a valid claim for false arrest under § 1983, "a plaintiff must plead an unreasonable deprivation of liberty in violation of the Fourth Amendment and satisfy the state law elements of the underlying claims." *Walker v. Sankhi*, 494 F. App'x 140, 142 (2d Cir. 2012) (summary order) (citing *Jaegly v. Couch*, 439 F.3d 149, 151–52 (2d Cir. 2006)). "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996); *see also Higginbotham v. Sylvester*, 741 F. App'x 28, 30 (2d Cir. 2018). "Probable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007).

As the conduct at issue occurred in Connecticut, the Court applies Connecticut law. Under Connecticut law, "[f]alse imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another." *Green v. Donroe*, 186 Conn. 265, 267, 440 A.2d 973 (1982). When an arrest is effected without a warrant, Connecticut law requires that the arresting officer possess probable cause to render the arrest lawful. *See Beinhorn v. Saraceno*, 23 Conn. App. 487, 491, 582 A.2d 208 (1990) (holding that "[b]ecause she was arrested without a warrant, General Statutes § 54–1f requires that the arresting officer have probable cause to effect a valid arrest," and that the plaintiff therefore bore "the burden of proving that the arresting officer did not have probable cause to arrest her").

Consistent with that principle, courts have recognized that a false arrest claim under Connecticut law fails where the arrest was supported by probable cause. *See Russo v. City of*

*Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007) (explaining that "[i]n a false arrest action, Connecticut law places the burden of proving an unlawful arrest on the plaintiff," citing *Beinhorn*, 23 Conn. App. at 491). To prevail on a false arrest claim under Connecticut law, a plaintiff must establish "(1) the defendant intentionally arrested him or had him arrested; (2) the plaintiff was aware of the arrest; (3) there was no consent to the arrest; and (4) the arrest was not supported by probable cause." *Shattuck v. Town of Stratford*, 233 F. Supp. 2d 301, 306 (D. Conn. 2002).

Trooper Soto argues that the false arrest claim must be dismissed because he had probable cause to arrest and initiate the charge based on (1) the information Soto received from DOC staff upon arrival at Hartford Correctional Center, (2) Corrections Officer Rizvani's written sworn statement describing the assault, and (3) Trooper Soto's review of a DOC hallway video depicting the events immediately preceding the use of force. Mem. Supp. at 1–3, 6–12.

Trooper Soto also argues that, even if Mr. Baltas disputes what occurred, he was entitled to rely on a putative victim's statement and the video evidence absent some concrete reason to doubt credibility, and that any claimed affirmative defense such as self-defense does not defeat probable cause. Mem. Supp. at 9–12; Def. Reply at 6–7, 10; *See also* Def. Reply at 4 (collecting Connecticut authority addressing self-defense in the probable-cause context).

Mr. Baltas responds that probable cause is lacking because (1) Rizvani's account is "false" or inconsistent with what Mr. Baltas contends the "actual DOC video" would show; (2) Trooper Soto's submitted video excerpt is "incomplete" and, in Mr. Baltas's view, "altered" or misleading, with missing footage purportedly showing staff assault and Mr. Baltas acting in self-defense; and (3) Mr. Baltas's asserted self-defense justification undermines probable cause for the arrest and prosecution. Pl. Mem. Opp'n at 1, 5–10; Pl. LR 56(a)(2) Stmt. ¶¶ 8–22; Pl. Sur-

Reply at 1–2. Mr. Baltas also presses procedural objections, including challenges to the admissibility of certain asserted facts as hearsay and complaints about how Trooper Soto presented or labeled exhibits. Pl. Mem. Opp'n at 3–5; Pl. Sur-Reply at 2.

The Court disagrees.

As a threshold matter, an arresting officer is entitled to rely on a victim's account of the offense in assessing probable cause. "The veracity of citizen complaints who are the victims of the very crime they report to the police is assumed." *Miloslavsky v. AES Eng'ring Soc'y*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992), aff'd, 993 F.2d 1534 (2d Cir. 1993), cert. denied, 510 U.S. 817 (1993). Here, Trooper Soto charged Mr. Baltas with a crime, Conn. Gen. Stat. Section 53a-167c, assaulting a peace officer, based on the sworn statement of Correctional Officer Rizvani. In that sworn statement, Correctional Officer Rizvani stated: "At approximately 0948 hours inmate Mr. Baltas, Joe, exited his cell and invaded my personal space. Mr. Baltas walked up to me and got in my face… Mr. Baltas attempted to grab me and struck me on the left side of my head with his fist." Police Report at 5.

Thus, at the time of Mr. Baltas's arrest, as a matter of law, Trooper Soto had probable cause to charge him for that crime. *See Oliveira v. Mayer*, 23 F.3d 642, 647 (2d Cir. 1994) ("Information about criminal activity provided by a single complainant can establish probable cause when that information is sufficiently reliable and corroborated.") (citations omitted); *id.* ("Significantly, when information furnished by a single complainant suffices to establish probable cause, such information often comes from the victim, who has provided specific details of the crime."); *See also id.* ("We would have a different case if the [criminal suspects] had been observed surreptitiously removing items from a home."). Indeed, in addition to Correctional Officer Rizvani's sworn statement, aspects of the alleged incident were captured on videotape.

*See* Mem. Supp. at 2–3, 11–12 & n.2; Def. Reply at 6–7 (depicting an encounter between Mr. Baltas and Correctional Officer Rizvani).

Instead of raising a genuine issue of material fact as to whether Trooper Soto had a sworn statement from the alleged victim on which to rely, or whether videotape captured an encounter between the alleged victim and the arrestee, Mr. Baltas instead disputes Correctional Officer Rizvani's account of the incident, challenges the accuracy of the video evidence, and advances a self-defense theory. Pl. Mem. Opp'n at 1, 5–10; Pl. LR 56(a)(2) Stmt. ¶¶ 8–22; Pl. Sur-Reply at 1–2 (asserting that the DOC video was incomplete or altered, disputing Correctional Officer Rizvani's version of events, and contending that additional footage would support a claim of self-defense). These arguments, however, miss the mark, addressing whether he committed the crime charged, rather than whether there was a sufficient factual basis for him to be charged with a crime. *See Kee v. City of N.Y.*, 12 F.4th 150, 158 (2d Cir. 2021)("[W]hen faced with a claim for false arrest, we focus on the validity of the arrest, and not on the validity of each charge.").

As a result, on this record, Mr. Baltas has not produced admissible evidence that would allow a reasonable jury to conclude Trooper Soto lacked probable cause at the time of arrest and initiation of the charge. *See Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (noting that where the motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts" or "rely on conclusory allegations or unsubstantiated speculation."); *See also Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

Accordingly, Trooper Soto's motion for summary judgment will be granted, as to Mr. Baltas's false arrest claim

**B. The Malicious Prosecution Claim**

To prevail on a § 1983 claim for malicious prosecution, a plaintiff must establish both "a violation of his rights under the Fourth Amendment" and the elements of malicious prosecution under state law. *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010). Thus, a plaintiff asserting a malicious prosecution claim under § 1983 must show an unreasonable post-arraignment deprivation of liberty and must also "establish the elements of a malicious prosecution claim under state law." *Id.*; *See also Murphy v. Lynn*, 118 F.3d 938, 944 (2d Cir. 1997).

Under Connecticut law, a plaintiff asserting malicious prosecution must prove that: "(1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." *Bhatia v. Debek*, 287 Conn. 397, 404, 948 A.2d 1009 (2008) (quoting *McHale v. W.B.S. Corp.*, 187 Conn. 444, 447, 446 A.2d 815 (1982)). Both federal and Connecticut law require a plaintiff asserting malicious prosecution to demonstrate the absence of probable cause. *Frey v. Maloney*, 476 F. Supp. 2d 141, 147 (D. Conn. 2007) (stating that a malicious prosecution claim fails absent proof that "the defendant acted without probable cause").

Here, the malicious prosecution claim fails for the same reason as the false arrest claim. As explained in the Court's false arrest analysis, Trooper Soto has carried his Rule 56 burden on the element common to both claims, probable cause, and the undisputed record establishes that

probable cause existed at the time he initiated the charge against Mr. Baltas. *See* Mem. Supp., at 6–12. Trooper Soto charged Mr. Baltas with assaulting a peace officer under Conn. Gen. Stat. § 53a-167c based on the sworn written statement of Correctional Officer Rizvani and his review of video footage depicting the incident. *See* Mem. Supp., at 2 (stating that Rizvani "provided a written, notarized statement"), 8–9 (quoting Rizvani's written statement), 11–12 (describing the hallway video excerpt and the conduct depicted).) Those materials provided "knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007).

Given that probable cause existed, Mr. Baltas cannot satisfy the third element of a malicious prosecution claim under Connecticut law. *See Bhatia*, 287 Conn. at 404 (holding that a plaintiff asserting malicious prosecution must prove that "the defendant acted without probable cause"). Nor can he establish a Fourth Amendment violation predicated on the initiation of criminal proceedings unsupported by probable cause. *See Manganiello*, 612 F.3d at 160–61(explaining that a § 1983 malicious prosecution claim requires "a violation of [plaintiffs] rights under the Fourth Amendment"). Mr. Baltas's arguments concerning the credibility of Correctional Officer Rizvani, the completeness of the video evidence, and his asserted claim of self-defense do not negate probable cause and therefore do not save his malicious prosecution claim. *See* Pl. Mem. Opp'n, ECF No. 82, at 6–10 (arguing, among other things, lack of probable cause and malice issues on the malicious prosecution claim); Pl. LR 56(a)(2) Stmt., ECF No. 81, ¶¶ 8–22 (disputing the video and characterizing events surrounding the encounter); Pl. Sur-Reply, ECF No. 90, at 1–2 (responding to Trooper Soto's arguments and reiterating Plaintiff's position on probable cause and related issues).)

Accordingly, because the undisputed record demonstrates the existence of probable cause, Mr. Baltas's malicious prosecution claim fails as a matter of law, and Trooper Soto are entitled to summary judgment on this claim.

**C. The Fabrication of Evidence Claim**

"To succeed on a fabricated-evidence claim, a plaintiff must establish that an (1) investigating official (2) fabricated information (3) that is likely to influence a jury's verdict, (4) forwarded that information to prosecutors, and (5) the plaintiff suffered a deprivation of life, liberty, or property as a result." *Barnes v. City of New York*, 68 F.4th 123, 128 (2d Cir. 2023).

Mr. Baltas argues that the Trooper Soto fabricated evidence by including statements in the CSP report concerning feces and by submitting a DOC video excerpt that Mr. Baltas contends was altered or misleading. Pl. Mem. Opp'n at 11–13; Pl. LR 56(a)(2) Stmt. ¶¶ 7–22, 56–58; Pl. Sur-Reply at 1–2. Mr. Baltas asserts that omission of footage favorable to Mr. Baltas is itself fabrication and that the video excerpt misrepresents what DOC provided. Pl. Sur-Reply at 1–2.

Trooper Soto responds that Mr. Baltas has not produced admissible evidence showing that Trooper Soto knowingly created false information. Def. Reply at 2–3, 9–10. Trooper Soto explains that the reference to "feces" reflected information relayed to him by Lieutenant Alexander and then reported, and that Mr. Baltas's "altered video" theory is speculative and unsupported. *Id.* Trooper Soto further maintains that the DOC video was created by the Department of Correction, not by Trooper Soto, and that Exhibit C was expressly presented as only a portion of the hour-long recording. Def. Reply at 2; *see also* Mem. Supp. at 11–12 n.2.

The Court agrees.

A fabrication-of-evidence claim requires evidence that an investigating official created false information likely to influence a jury and forwarded that information to prosecutors, causing a deprivation of liberty. Mem. Supp. at 19 (stating that "[t]o succeed on a fabricated-evidence claim, a plaintiff must establish that an (1) investigating official (2) fabricated information (3) that is likely to influence a jury's verdict, (4) forwarded that information to prosecutors, and (5) the plaintiff suffered a deprivation of life, liberty, or property as a result"); *Barnes v. City of New York*, 68 F.4th 123, 128 (2d Cir. 2023) (quoting *Ashley v. City of New York*, 992 F.3d 128, 139 (2d Cir. 2021)).

To survive summary judgment, Mr. Baltas must "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact," and may not rely on allegations that are "merely colorable" or "not significantly probative." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). He must do more than "than simply show that there is some metaphysical doubt as to the material facts" or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015). Mr. Baltas has not done so.

On this record, Trooper Soto learned from Lieutenant Alexander that Mr. Baltas smeared feces on himself and in his cell. Mem. Supp. at 2. Even if Lieutenant Alexander's assertion was inaccurate, Mr. Baltas has not identified admissible evidence from which a reasonable jury could infer that Trooper Soto knowingly invented this allegation or knowingly forwarded false information, as opposed to documenting what DOC personnel reported. Pl. Mem. Opp'n at 11–13. As a result, there is no record evidence that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

Similarly, Trooper Soto relied on record evidence – videotape evidence –depicting the conduct giving rise to the arrest, Mem. Supp. at 11–12 & n.2; Def. Reply at 2, while Mr. Baltas merely asserts that other videotape evidence is favorable to him. Pl. Sur-Reply at 1–2. But this argument – unsupported by any record evidence – about other evidence does not create a genuine issue of material fact as to the alleged fabrication of the evidence relied upon by Trooper Soto. At this stage of the case, Mr. Baltas must do more than "rely on conclusory allegations or unsubstantiated speculation." *Robinson*, 781 F.3d at 44. Instead, he must "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Anderson,* 477 U.S. at 250. Having failed to do so, once again, there is no record evidence that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

Accordingly, Trooper Soto' motion for summary judgment will be granted as to Mr. Baltas's fabrication-of-evidence claim.

**D. The Defamation Claim**

Under Connecticut law, a defamation claim requires proof of specific elements and material falsity. As the Connecticut Appellate Court has explained, "[a]t common law, [t]o establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Stevens v. Khalily*, 220 Conn. App. 634, 642, 298 A.3d 1254 (2023). In addition, a plaintiff must show "that any actionable, defamatory statement is false in some material respect." *Holbrook v. Casazza*, 204 Conn. 336, 358, 528 A.2d 774 (1987). Further, "[i]n a civil action for defamation, where the protected interest is the plaintiff's personal reputation, the rule in Connecticut is that the truth of the allegedly

defamatory statement of fact provides an absolute defense." *Crismale v. Walston*, 184 Conn. App. 1, 18, 194 A.3d 301 (2018).

Mr. Baltas argues that Trooper Soto defamed him by "posting" a DPS-90-C "Criminal Information Summary" online, allegedly describing Mr. Baltas as assaulting an officer and referencing feces-related accusations, and he asserts that this publication occurred on a Connecticut State Police website and through media reporting. Pl. Mem. Opp'n at 11–13; Pl. LR 56(a)(2) Stmt. ¶¶ 23–26, 56–59. Mr. Baltas's Local Rule statement repeatedly frames this alleged publication as based on "knowledge, information and belief." Pl. LR 56(a)(2) Stmt. ¶ 59.

Trooper Soto responds that Mr. Baltas has produced no admissible evidence that any such publication occurred. In support, Trooper Soto submits a declaration stating that he did not speak to reporters or private citizens about Mr. Baltas, did not post on social media, did not publish any information on a Connecticut State Police website, and lacked the ability to post content on any state website. Mem. Supp. at 3–4; Def. Reply at 3–4, 7–8. Trooper Soto further argues that Mr. Baltas's reliance on assertions made "upon knowledge, information, and belief," without a competent evidentiary foundation, is insufficient to defeat summary judgment under Rule 56. Def. Reply at 3–4, 7–8.

The Court agrees.

Trooper Soto has provided a sworn affidavit denying any role in posting the DPS-90-C "Criminal Information Summary" online, communicating with reporters, or modifying state or Connecticut State Police websites. *See* Soto Decl. ¶¶ 18–20, ("I did not speak to any reporters or private citizens concerning this incident and Mr. Baltas. I did not publish any posts on social media concerning Mr. Baltas. I did not post any information about Mr. Baltas on any website, and I did not and do not have the ability to post information on the State Police website."); Mem.

Supp. at 3–4; Def. Reply at 8. While Mr. Baltas points to the DPS-90-C form as proof of online publication, nothing in that document, or elsewhere in the record, establishes who uploaded it to any website or that Trooper Soto personally disseminated it.

As a result, rather than "com[ing] forward with specific evidence demonstrating the existence of a genuine dispute of material fact," *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015), Mr. Baltas relies on conclusory assertions that "will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Because Mr. Baltas has not produced evidence from which a reasonable jury could find publication by Trooper Soto, the record reflects "no genuine issue as to any material fact." Fed. R. Civ. P. 56(a).

Accordingly, Trooper Soto's motion for summary judgment will be granted, as to Mr. Baltas's defamation claim.[1]

## IV. CONCLUSION

---

[1] The Court has considered Mr. Mr. Baltas's procedural objections to Trooper Soto' motion for summary judgment, and that he had no obligation to submit additional sworn materials beyond the Verified Complaint and his Local Rule statement, *See* Pl. Mem. Opp'n at 3–5; Pl. Sur-Reply at 1–2, and where appropriate, has taken these submissions into account in evaluating whether Mr. Baltas has raised a genuine issue of material fact. But, as the U.S. Supreme Court has explained, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 247–48 (1986).

On this record, in its entirety – as discussed further above – Mr. Baltas has not "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact," *Robinson v. Concentra Health Servs.*, Inc., 781 F.3d 42, 44 (2d Cir. 2015), leading to "but one reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250: summary judgment as to all of his claims. Moreover, although "[o]nce we decide that there is no constitutional violation, there typically is no need to address whether defendants are also protected by qualified immunity," *Duamutef v. Hollins*, 297 F.3d 108, 113 n.1 (2d Cir. 2002), even if a constitutional violation had occurred, Trooper Soto would be entitled to qualified immunity. The undisputed record reflects that Trooper Soto's actions were objectively reasonable under the governing law, and there is no clearly established authority that would have placed him on notice that his conduct violated the Constitution. Accordingly, qualified immunity would independently warrant judgment in Trooper Soto's favor.

For the foregoing reasons, Trooper Soto's second motion for summary judgment is **GRANTED**.

The Clerk of Court is respectfully directed to enter judgment in favor of Trooper Jason Soto and to close this case.

**SO ORDERED** at New Haven, Connecticut, this 19th day of February, 2026.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE